IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA
   *Respondent*,

v.

JACOBY WALKER,
   *Petitioner*.

Criminal No. ELH-18-0017
Related Civil No. ELH-20-0776

**MEMORANDUM OPINION**

Petitioner Jacoby Walker, who is now self-represented, has filed a "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence." ECF 678 (the "Motion"). He pleaded guilty on April 5, 2019, to conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin and received the mandatory minimum sentence of 10 years' imprisonment. ECF 509; ECF 589.

Walker now argues that his counsel was ineffective because the government did not prove that it was reasonably foreseeable to him that the conspiracy involved at least one kilogram of heroin. ECF 678. He also asserts that his lawyer failed to investigate the precise quantity of drugs for which he could be held accountable. *Id.* The government opposes the Motion. ECF 727. Walker has replied. ECF 747.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.[1]

---

[1] This Memorandum Opinion does not address Walker's motion for compassionate release. *See* ECF 689.

## I.  Background

The defendant was one of eighteen people indicted on January 11, 2018.  ECF 1.  A nineteenth defendant was added in a Superseding Indictment filed March 22, 2018.  ECF 157.  Of relevance here, defendant was charged in Count One with conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846.  *Id.*

Walker entered a plea of guilty to that offense on April 5, 2019 (ECF 509), pursuant to a written plea agreement.  ECF 512 (Plea Agreement).  He agreed that it was "reasonably foreseeable to him that members of the conspiracy would distribute one kilogram or more of heroin."  *Id.* at 10.

According to the factual stipulation in the Plea Agreement, from at least March 2017 to September 2017, Walker was a member of the Transformers Drug Shop, which distributed heroin in the "Panyard" area of Baltimore.  *Id.* at 10-11.  During the Drug Enforcement Administration's investigation of the shop, phone calls were intercepted that established defendant's participation in the drug conspiracy.  For example, investigators intercepted a call during which Walker checked on a street-level dealer's whereabouts.  *Id.*  Moreover, a pole camera was installed in the Panyard, which captured Walker, on several occasions, engaging in narcotics sales.  *Id.*

Moreover, in ¶ 6(a) of the Plea Agreement, Walker stipulated to sentencing guidelines that contemplated at least one kilogram of heroin.  It provides:

> This Office and the Defendant further agree that the applicable base offense level is a level 30 pursuant to United States Sentence Guidelines ("U.S.S.G.") § 2D1.1(c)(5) to account for a conspiracy to distribute one kilogram or more of heroin.

Notably, the plea was tendered under Fed. R. Crim. P. 11(c)(1)(C).  *Id.* ¶ 9.  In particular, the parties agreed to a sentencing range between 120 months and 144 months of imprisonment.

*Id.* ¶¶ 9-10.  And, the offense carried a mandatory minimum term of ten years' imprisonment.  *Id.* ¶ 3.

Further, the Plea Agreement expressly provided that there was no agreement as to the defendant's criminal history and that his criminal history could affect his offense level.  *Id.* ¶ 7.  The Presentence Report ("PSR," ECF 567) generally calculated Walker's Guidelines consistent with the Plea Agreement.  However, it increased the defendant's base offense level from 30 to 37, because of a determination that Walker qualified for career offender status.  *See id.* ¶¶ 7-9, 14-23.

After crediting Walker for acceptance of responsibility, his Guidelines called for a period of incarceration ranging between 262 months to 327 months.  *Id.* ¶ 65.  Nevertheless, on June 21, 2019, the Court sentenced Walker to 120 months' imprisonment, which corresponded to the bottom of the C-plea range and the mandatory minimum sentence.  ECF 589.  No appeal was filed.

## II.   Legal Standards

### A.

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack.  *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under § 2255, the Petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to

render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). And, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).  A failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.")  (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) ("the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391 (4th Cir. 2009).

However, there is no procedural default as to claims concerning ineffective assistance of counsel.  Moreover, such claims ordinarily are not litigated on direct appeal.  Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010); *see also United States v. Ladson*, 793 Fed. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).  Generally,

4

such claims are litigated in a § 2255 action, to allow for development of the record. *Massaro v. United States*, 538 U.S. 500, 504-06 (2003); *Ladson*, 2793 Fed. App'x 202.

In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). This is such a case; no hearing is necessary.

**B.**

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to the effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States*

5

*v. Palacios*, ___ F.3d ___, 2020 WL 7849236, at *2 (4th Cir. Dec. 15, 2020); *United States v. Akande*, 956 F.3d 257, 260 (4th Cir. 2020); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013). The petitioner must prove his claim by a preponderance of the evidence. *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010); *Miller v. Untied States*, 261 F.2d 546, 547 (4th Cir. 1958).

The first prong, known as the "performance prong," relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has said that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court stated, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional

responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Notably, claims lodged under the performance prong "are evaluated in light of the available authority at the time of counsel's allegedly deficient performance." *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). Although counsel "are obliged to make [] argument[s] that [are] sufficiently foreshadowed in existing case law," counsel is not deficient "for failing to predict" changes in the law. *Id.* at 824 (alterations in *Morris*; internal quotation marks omitted). A claim of ineffective assistance is evaluated in light of "the strength of case law as it existed at the time of allegedly deficient representation." *Palacios*, 2020 WL 7349236, at *3; *see United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017).

7

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

The Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson,* 397 U.S. 749, 771 (1970). But, the prejudice prong of the *Strickland* test is slightly modified. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit described a defendant's burden in the context of a post-guilty plea claim of ineffective assistance of counsel and said, *id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)):

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

8

*Accord Burket v. Angelone,* 208 F.3d 172, 189 (4th Cir. 2000); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294–99 (4th Cir. 1992). Moreover, when a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005).

In *Hill*, 474 U.S. 52, the Supreme Court explained that, "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). And, as noted, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Hooper*, 845 F.2d 471, provides guidance. In that case, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472. However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the district court denied. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. The Court was not persuaded that the report provided evidence sufficient to establish a reasonable probability

that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding. *Id.*

### III. Discussion

Walker seems to argue ineffective assistance for three reasons: (1) his counsel failed to ascertain the drug amount for which Walker was specifically responsible; (2) his counsel allowed him to pled guilty to an offense that carried a 10-year mandatory minimum even though, according to Walker, the government produced no evidence of the drug quantity reasonably foreseeable to him; and (3) for the same reason, the reasonably foreseeable drug amount exposed Walker to a higher Guidelines range.

To the extent that Walker contends that he is responsible only for the drugs directly traceable to him, he cannot show deficient performance on this basis. In *United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999), the Court said that "the district court may attribute to the defendant the total amount of drugs involved in the conspiracy, provided the drug quantities were reasonably foreseeable to the defendant and are within the scope of the conspiratorial agreement."

To be sure, the factfinder cannot "automatically rely on the quantity attributed to the conspiracy as a whole." *United States v. Irvin*, 2 F.3d 72, 75 (4th Cir. 1993). However, the defendant "need not have actual knowledge of the exact quantity of narcotics involved in the entire conspiracy; rather, it is sufficient if he could reasonably have foreseen the quantity involved." *United States v. Snow*, 462 F.3d 55, 27 (2d Cir. 2006) (citations omitted). Thus, "the question is whether the conspiracy-wide quantity was within the scope of the criminal activity the defendant

10

agreed to and whether the activity in question was foreseeable to the defendant." *Id.* (citations omitted).

*United States v. Bell*, 667 F.3d 431, 441 (4th Cir. 2011), is instructive. There, the Fourth Circuit said: "In conspiracy cases, base offense levels are determined based on 'all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant,' as well as the 'reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.'" (Quoting U.S.S.G. § 1B1.3(a)(A) & (B)). The Court made clear that, with respect to controlled substances and jointly undertaken criminal activities, "the Guidelines hold a defendant 'accountable for all the quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activities that he jointly undertook.'" *Bell*, 667 F.3d at 441 (citation omitted).

The case of *United States v. Flores-Alvarado*, 779 F.3d 250 (4th Cir. 2015), also provides guidance. In that case, the defendant pleaded guilty to conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 1,000 kilograms or more of marijuana. As to sentencing, the Fourth Circuit reversed the district court because it failed to make the requisite factual findings with respect to the disputed drug quantity attributable to the defendant.

In that case, the presentence report determined that the defendant was accountable for the equivalent of 31,111.16 kilograms of marijuana, which included drug quantities found at locations in North Carolina and Kentucky. The defense filed numerous objections to the proposed drug quantity attributed to the defendant, including as to seizures from two residences involving other drug dealers. The government maintained that it was foreseeable to the defendant that, at those

locations, the drug suppliers would have on hand quantities exceeding the amount the defendant sought to purchase. *Id.* at 54. The district court agreed with the government.

The Fourth Circuit acknowledged that "sentences imposed for drug offenses are driven by the quantity of drugs involved." *Id.* at 255. Further, it stated, *id.*: "Under the Guidelines, the drug quantities that may be attributed to the defendant include the quantities associated with the defendant's offense of conviction and any relevant conduct." (citing *United States v. Gilliam*, 987 F.2d 1009, 1012-13 (4th Cir. 1993)). It explained that in a conspiracy case, relevant conduct includes "'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.'" (Quoting U.S.S.G. § 1B1.3(a)(1)(B)).

The Court made clear, as the Guidelines point out, that "'the scope of the criminal activity jointly undertaken by the defendant . . . is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant . . . .'" *Flores-Alvarado*, 779 F.3d at 255 (italics omitted) (quoting U.S.S.G. § 1B1.3, cmt. 3). The Court added: "'The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision. The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or is not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.'" *Id.* (quoting U.S.S.G. § 1B1.3, cmt. 3) (emphasis omitted).

The Fourth Circuit emphasized in *Flores-Alvarado* that "foreseeability is not enough; the acts of others may be attributed to a defendant only if those acts were foreseeable to the defendant *and* were within the scope of the defendant's agreement to jointly undertake criminal activity." *Id.* at 256 (emphasis in original). Therefore, the Court said: "'[I]n order to attribute to a defendant for

sentencing purposes the acts of others in jointly-undertaken criminal activity, those acts must have been within the scope of the defendant's agreement *and* must have been reasonably foreseeable to the defendant.'" *Id.* at 255 (citation omitted; emphasis in *Flores-Alvarado*); *see also* U.S.S.G. § 1B1.3, cmt. 3. Further, the Court underscored that the sentencing court "must make particularized findings" as to both the scope of the defendant's agreement and the foreseeability of the conduct in issue. *Flores-Alvarado*, 779 F.3d at 256 (emphasis omitted); *see also United States v. Bolden*, 325 F.3d 471, 499 (4th Cir. 2003).

But, as the *Bell* Court recognized, the government may present evidence "from which the sentencing court may 'approximate the quantity.'" *Bell*, 667 F.3d at 441 (citation omitted). Similarly, in *United States v. Crawford*, 734 F.3d 339, 342 (4th Cir. 2013), the Court observed that the Guidelines "make clear" that, "'[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.'" (quoting U.S.S.G. § 2D1.1, cmt. n.5). And, so long as the information has sufficient indicia of reliability, a court may consider relevant information, "without regard to its admissibility under the rules of evidence applicable at trial . . . ." *Crawford*, 734 F.3d at 342. Moreover, negotiated but undelivered amounts of drugs generally may be considered. *See United States v. Brooks*, 957 F.2d 1138, 1150-51 (4th Cir. 1992).

Here, the government had ample evidence that Walker reasonably foresaw at least one kilogram of heroin. Walker admitted that, during a several-month period, he belonged to a drug shop that had numerous members; government wiretaps intercepted several of his calls and those of his conspirators; and pole cameras captured Walker making street-level sales, as well as handing drugs and drug proceeds to his conspirators, and having multiple conversations with his conspirators. It also captured his conspirators making street-level sales in the same Panyard where

13

Walker sold drugs. *See id.* Walker's daily activities and his interactions with conspirators showed that he knew he was part of a large, active drug-trafficking organization.

Moreover, the facts showed that Walker was not a mere street-level dealer. The government intercepted calls showing that Walker had at least some oversight responsibilities for the shop. Walker stipulated to those facts and agreed that the government would have proven them at trial. *Id.*

A reasonable factfinder could extrapolate from Walker's role in the organization, his interactions with others, and his own daily drug sales, that his shop would have sold a large amount of drugs over the course of the conspiracy, which had a duration of at least several months. Walker admitted that it was reasonably foreseeable to him that members of the conspiracy would distribute one kilogram or more of heroin.

Finally, to the extent that Walker argues that his counsel was ineffective at sentencing, he would be unable to show deficient performance or prejudice. For sentencing purposes, the Court may consider "all acts and omissions of others" in a "jointly undertaken criminal activity" that are "reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(B)(iii). The government must prove those acts by a preponderance of evidence. And, it can meet that burden (1) by showing "a defendant's acknowledgement during the rule 11 colloquy or sentencing proceedings that the amount set forth in the indictment or alleged by the Government is correct"; (2) "when a defendant, without reserving his right to challenge the amount for sentencing purposes, pleads guilty to an indictment that attributes a specific quantity of drugs to the defendant"; (3) "a stipulation of the parties that the court determines to have a reasonable factual basis"; and (4) "if a defendant fails to properly object to a recommended finding in a presentence report that the court determines to be reliable." *United States v. Gilliam*, 987 F.2d 1009, 1013 (4th Cir. 1993).

Walker pled guilty to Count One, charging him with conspiracy involving at least one kilogram of heroin, and he did not contest that amount. When a defendant pleads guilty to an indictment that charges him with a specific quantity of drugs, "without reserving his right to challenge the amount for sentencing purposes," the Court may find "that the alleged quantity should in fact be attributed." *Gilliam*, 987 F.2d at 1013 & n.3: *see also Hardin v. United States*, 3:17-cr-137-RJC-DCK-2, 2020 WL 2542868, at *9 (W.D.N.C. May 19, 2020) (concluding that pleading guilty to the offense as charged and stipulating to the foreseeable amount in the statement of facts "relieved the Government of its burden of proof regarding the drug amount attributable" to the defendant"); *Brooks v. United States*, 166 F. Supp. 2d 366, 371 (D. Md. 2001) (rejecting § 2255 claim that government did not meet its burden when the defendant stipulated to the quantity of drugs in his Guidelines stipulation and the statement of facts).

Moreover, Walker did not object to the drug quantity calculations in the PSR. *See* PSR at 19. By pleading guilty, failing to reserve the right to challenge the drug amount, and failing to object to the drug quantity in the PSR, Walker cannot say his counsel performed deficiently by allowing him to be sentenced with no factual basis.

In any event, and significantly, Walker cannot show prejudice because his final Guidelines range was determined by his career offender status, not the drug quantity. Walker's base offense level began at 30, based on one kilogram of heroin. Ultimately, however, the offense level was not determined by the drug quantity. The offense level increased to 37, before three deductions for acceptance of responsibility, because Walker qualified as a career offender, based on factors unrelated to the drug amount: his age, his underlying offense (a controlled substance offense), and his previous criminal history. *See* ECF 567, ¶¶ 20, 39; *see also id.* ¶¶ 26, 28, 35, 36; 37; U.S.S.G. § 4B1.1 (outlining the requirements for career offender status). So, even if the defendant did not

15

admit to one kilogram, his final offense level was 34, without regard to the drug quantity. And, as a result of his career offender status, his criminal history increased from IV to VI. *See* ECF 567, ¶¶ 38, 39.

Because Walker cannot show deficient performance or prejudice, his claim fails as to drug quantity. But for the drug quantity, Walker may not have been subject to the mandatory minimum of ten years. But, Walker's career offender status, not the drug amount, determined his final Guidelines range. *See Strickland*, 466 U.S. at 694 (requiring the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). And, the parties entered into a C plea with a range. The Court sentenced defendant at the bottom of the range. The C plea was far below the Guidelines range.

Defendant does not challenge the evidence that the government collected through the wiretaps or pole cameras. Rather, he argues only that the evidence did not establish a reasonable foreseeability of the drug quantity. The agreement to the drug amount in his Plea Agreement suggests otherwise—that he would not have prevailed, might have lost the benefit of accepting responsibility under the Guidelines, and might have exposed himself to a higher sentence than the bottom of the C plea or the mandatory minimum if his counsel challenged the drug quantity at sentencing.

Walker also lodges a claim of failure to investigate. But, he cannot show deficient performance based on this claim. His assertion that counsel failed to investigate the correct quantity of drugs is conclusory. Walker has not alleged any facts that, if proven, would establish that the drug amount found by the Court was erroneous. Nor has he offered affidavits, letters, correspondence, or other evidence to support his claim. As the government puts it, "That is fatal." ECF 727 at 8 (citing *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (explaining that

"vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court" and that the Court should properly address the claims that "were supported by facts and argument").

Walker has established little more than a challenge to reasonable trial strategy under the circumstances. *See Cooper v. United States*, 4:04-598-CWH, 2007 WL 753130, at *2 (D.S.C. Mar. 8, 2007) (concluding that counsel's failure to object to the drug amount was reasonable trial strategy in light of the evidence and the defendant's sentencing exposure).

In sum, Walker cannot establish deficient performance or prejudice under *Strickland*. His post-conviction claims fail.

### IV.    Conclusion

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the Court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding.[2]  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 773 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack*

---

[2] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.

*v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Petitioner has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.

An Order follows.

Date:   December 21, 2020                              /s/
                                                       Ellen L. Hollander
                                                       United States District Judge